UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JUDITH SKIBA                                    CIVIL ACTION

VERSUS                                          NO. 13-5693

JACOBS ENTERTAINMENT, INC. ET AL.               MAGISTRATE JUDGE
                                                JOSEPH C. WILKINSON, JR.


## ORDER AND REASONS ON MOTIONS

In this employment discrimination action, plaintiff, Judith Skiba, appearing pro se, alleges that her former employer, defendant Jacobs Entertainment, Inc. ("Jacobs"),[1] discriminated against her based on her race (Caucasian) and retaliated against her for engaging in protected activity, in violation of Title VII.  42 § U.S.C. 2000e et seq. Complaint, Record Doc. No. 1.  This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.  Record Doc. No. 22.

Jacobs filed a motion for summary judgment, supported by the declaration under penalty of perjury of defendant's Louisiana Director of Human Resources, Asha Johnson; several verified documentary exhibits; and a verified copy of video surveillance footage from plaintiff's former workplace.  Record Doc. No. 41.

Because Skiba is proceeding pro se, the court ordered that her response to the summary judgment motion "should include sworn affidavits or other evidentiary

---

[1]Plaintiff's claims against her former supervisor, defendant Pam Stuart, were previously dismissed with prejudice.  Record Doc. No. 24.

materials that set forth specific facts demonstrating that there is a genuine issue of material fact for trial in this case.  Failure to follow the requirements of this order may result in entry of final judgment in favor of defendant without a further hearing."  Record Doc. No. 43.

Skiba filed a timely opposition memorandum that includes several unverified exhibits.  Record Doc. No. 48.  These are the same exhibits that she attached to her unverified complaint.  She did not submit any sworn statements.

Jacobs received leave to file a reply memorandum, Record Doc. Nos. 52, 53, 54, and Skiba was permitted to file a sur-reply.  Record Doc. Nos. 55, 57 and 58.  Jacobs objects that none of plaintiff's exhibits is admissible because they are unverified, some contain inadmissible hearsay and some are irrelevant to the issues in the instant case.  Fed. R. Civ. P. 56(c).  Although defendant's objections are well founded, I have considered Skiba's exhibits only to the extent that I find that, even if they were verified and otherwise admissible, the exhibits are insufficient to carry her summary judgment burden on any of her claims.  Thus, giving Skiba an opportunity to verify the exhibits would not change the outcome of this decision.

After Jacobs filed its motion for summary judgment, Skiba filed a "Motion for Production."  Record Doc. No. 47.  Jacobs filed a timely opposition memorandum.  Record Doc. No. 51.  For reasons stated below, IT IS ORDERED that plaintiff's motion is DENIED.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, IT IS FURTHER ORDERED that defendant's motion for summary judgment is GRANTED.

## I.   PLAINTIFF'S MOTION FOR PRODUCTION

Skiba contends in her motion for production and in her opposition to defendant's summary judgment motion that she should be allowed to compare the copy of the surveillance videotape that defendant served upon her in support of its motion for summary judgment with the copy filed with the court to ensure that they are the same. Johnson's sworn declaration attached to defendant's summary judgment motion affirms that the videotape provided is a true and correct copy of the original surveillance videotape. Declaration under penalty of perjury of Asha Johnson, Record Doc. No. 41-1, at ¶ 5. Defendant's certificate of service attached to its motion for summary judgment confirms that it provided Skiba with a copy of its motion, including the compact disc containing the video footage. Plaintiff does not dispute that she received it.

Skiba has produced no competent evidence to refute these declarations. She only speculates that the two copies might not be the same. For more than one month, the surveillance video filed with the court has been available for her inspection and comparison to the copy simultaneously served upon her in the clerk's office. She apparently has not undertaken that review. Her wholly baseless speculation is

insufficient to support the relief she requests in her motion for production, which is denied.

II.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

A.   Standards of Review

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> (3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
> (4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that

4

> would be admissible in evidence, and show that the affiant or declarant is
> competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete

failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

B.    The Undisputed Facts

The following material facts are accepted as undisputed, solely for purposes of the pending motion for summary judgment.

Jacobs operates travel plazas throughout Louisiana that cater to commercial and individual travelers.  Each facility contains a convenience store, restaurant, fueling operations and a gaming facility.

Jacobs hired Skiba on October 18, 2012, to work as a full-time casino associate at its facility in Raceland, Louisiana.  She attended employee orientation and received a copy of defendant's employee handbook and anti-harassment policy.  She signed an acknowledgment that she had received, reviewed, understood and would abide by the company's policies.  Defendant's Standards of Conduct provide that termination of employment may occur if an employee engages in discourteous, unfriendly, obscene, profane or abusive language or behavior towards guests or co-workers.

Jacobs trained Skiba as a casino associate, but she had difficulties performing the job duties.  In late November 2012, Jacobs changed Skiba's position to store associate and trained her for that job.  She began working full-time in the convenience store at the same rate of pay.

Plaintiff continued to have difficulty performing her duties in the new position.  Jacobs provided her with additional training and with a peer trainer to work side by side with her.  This hands-on training was designed to ensure that Skiba received proper

7

training and instruction and to help her improve her job performance.  Over the course of her employment, Skiba received training from Jessie Arabie, Tammy McKinley, Donna Smith and Darrus Gregory.  Plaintiff received training that was equal to or greater than that given to other employees.

Skiba nonetheless continued to have issues with her job performance.  These issues included overcharging customers; using the cash register improperly, resulting in providing customers with the subtotal due and not the total amount; failing to swipe identification for purchases requiring proof of age; and failing to place alcoholic beverages sold to customers in bags as required.

Jacobs also received reports that Skiba treated African-American customers differently than Caucasian customers.  In this regard, it was reported or observed that plaintiff regularly washed her hands after interacting with African-American customers and refused to hand African-American customers their change, instead placing the change on the counter to avoid physical contact.

On December 24, 2012, Skiba used defendant's workplace reporting procedures to complain about her training.  This date is taken from plaintiff's complaint in this court and from the unverified "Discrimination or Harassment" report that she attached to both her complaint in this court and her opposition to defendant's summary judgment motion. Jacobs does not specify in its submissions the date when it received plaintiff's internal complaint, but acknowledges that Skiba made a complaint about her training.  Although

Jacobs disputes that plaintiff's internal complaint constituted activity protected by Title VII, the court resolves this material fact dispute in plaintiff's favor and assumes for purposes of the pending summary judgment motion that she complained to her employer about racially discriminatory training on December 24, 2012.

Jacobs had a security vendor, Weiser Security Services, Inc. ("Weiser Security"), who provided guards to work at defendant's Raceland store.  On January 5, 2013, Jacobs received a complaint from a male customer, through Weiser Security, that Skiba had made an offensive comment to the customer.  Kellie Jarvis, the Weiser Security guard on duty at plaintiff's store that day, reported that the customer told Jarvis that Skiba had said to him:  "I'm going to cut your dick off and feed it to a Jewish family."

Weiser Security provided to Jacobs a contemporaneous Incident Report prepared by Jarvis dated January 5, 2013.  Jarvis confirms in her report that a customer named "ZZ" complained to her that Skiba made the offensive comment, which is quoted in the report.  Defendant's Exh. G, Record Doc. No. 41-1 at p. 32.

As part of defendant's investigation into the incident, Johnson reviewed the Incident Report and the store surveillance video, which depicts plaintiff's conversation with the male customer in one location in the store and her subsequent picking up a knife in a different location.  Johnson states in her declaration that, "[a]s part of the exchange, the Plaintiff picked up a knife by the sink and shook the knife while looking directly at the customer."  Record Doc. No. 41-1 at ¶ 18.

9

Based on the January 5, 2013, incident, the report from Weiser Security and her review of the surveillance video, Johnson decided to terminate plaintiff's employment on January 7, 2013, for violating company policy on numerous occasions, and particularly on January 5, 2013, with regard to plaintiff's inappropriate interaction with the customer who had complained.

The videotape consists of two brief sections of soundless video footage from cameras in two different locations. In the chronologically first section of videotape from Camera Number 8 (which is the second section of videotape on the compact disc that was submitted to the court), Skiba approaches from the right of the frame, stops and speaks with a man whose back is to the camera for most of the conversation. Although the man's body blocks plaintiff's face in part during some of the time, she appears to be smiling through much of the conversation. As she starts to walk away to the right of the frame, the customer turns and walks towards the camera, shaking his head. This portion of videotape lasts from 04:25:51 through 04:26:30.

The chronologically second section of videotape from Camera Number 6 begins 15 seconds later at 04:26:45. Skiba enters the frame from the left at 04:26:52 and turns to her right, walking behind the cash register counter and towards the camera. As she washes and dries her hands at a sink along the wall behind the counter, she is looking to her right, towards the camera, and appears to be speaking to someone who is outside the frame and never seen. At 04:27:18, she picks up a knife in her left hand from behind the

sink. She smiles, turns her head to her right and brandishes the knife for one second, then laughs and puts the knife behind the sink. The knife is pointed toward the ceiling while Skiba holds it. Five seconds elapse from the time she reaches for the knife until she replaces it. Still smiling, she then moves to her right, towards the camera and out of the frame. She immediately comes back into the frame and walks away from the camera until she turns to her right and reaches for what appears to be a pack of cigarettes in a rack along the wall. She faces back toward the camera and holds up the package toward the camera while speaking, apparently asking if this is the correct one. She puts the pack back into the rack, removes a different pack and, still smiling, walks towards the camera and out of the frame. This portion of videotape ends at 04:27:43.

Plaintiff contends in her opposition memorandum (which is not supported by any sworn evidence) that the first videotape from Camera Number 8 depicts her friendly conversation with ZZ, a trucker with whom she states she had spent several hours the previous day helping two other persons move furniture. She alleges that the videotape shows her "sympathizing with" ZZ about the work of furniture moving and asking him whether he had recovered from their earlier "moving escapade." Record Doc. No. 48 at p. 14. She does not explain why he was shaking his head as he moved away from her.

Skiba alleges that the second videotape from Camera Number 6 shows her being excited that a friend had brought her some food, id., but that the friend forgot to bring her any silverware. Plaintiff states that she was laughing and joking as she picked up the

knife to show her friend that she did not need any silverware because she had a knife. Id. at pp. 15-16.

C.     Plaintiff Cannot Assert New Claims in her Opposition Memorandum

As a threshold matter, Skiba's charge of discrimination with the Equal Employment Opportunity Commission and her complaint in this court allege only (1) race discrimination in connection with the amount of training she received, (2) possibly, a racially hostile work environment,[2] and (3) retaliatory termination. Complaint, Record Doc. No. 1, and Equal Employment Opportunity Commission Charge of Discrimination, attached at p. 9.  In her memorandum in opposition to defendant's summary judgment motion, Skiba makes arguments based on allegations of sex discrimination and deprivation of due process.  However, she has never attempted to amend her complaint to add claims based on these theories.  To the extent that plaintiff's arguments based on these new theories can be construed as an attempt to amend her complaint, the "court [does] not need to entertain this type of 'nested request [ ] for amendment.'" Patrick v. Wal-Mart, Inc., 681 F.3d 614, 622-23 (5th Cir. 2012) (quoting Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc., 497 F.3d 546, 556 (5th Cir.

---

[2]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); accord Toala v. Marriott White Lodging Corp., 456 F. App'x 476, 477 (5th Cir. 2012), and I have done so in this case.

2007)); accord ISystems v. Spark Networks, Ltd., 2012 WL 3101672, at *5-6 (5th Cir. Mar. 21, 2012).

The deadline to amend pleadings in this action expired on December 27, 2013. Record Doc. No. 23. Skiba may not amend her complaint after the court-ordered deadline without demonstrating good cause for modifying the court's scheduling order and obtaining leave of court to amend, which she has not done. Even if she properly sought leave, allowing her to amend to assert these two claims would be futile.

"It is within the district court's discretion to deny a motion to amend if it is futile[, which means] that the amended complaint would fail to state a claim upon which relief could be granted." Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000); accord Fenghui Fan v. Brewer, 377 F. App'x 366, 367 (5th Cir. 2010). If the amendment would offer plaintiff no avenue of redress, there is no reason to allow it. Davis v. United States, 961 F.2d 53, 57 (5th Cir. 1991); Jamieson v. Shaw, 772 F.2d 1205, 1208 (5th Cir. 1985).

Skiba did not assert sex discrimination in her charge of discrimination filed with the Equal Employment Opportunity Commission that is attached to her complaint, and she has produced no evidence that she ever filed a charge of sex discrimination. She is therefore barred from asserting such a claim in this court under Title VII because of her failure to exhaust administrative remedies. McClain v. Lufkin Indus., Inc., 519 F.3d 264,

273 (5th Cir. 2008); Pacheco v. Mineta, 448 F.3d 783, 788 (5th Cir. 2006).  Allowing an amendment to assert this claim would be futile.

A due process claim "requires some state action," Martin v. Grehn, No. 13-50070, 2013 WL 5346707, at *4 (5th Cir. Sept. 25, 2013) (citing Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 172 (1972)), but the facts of plaintiff's case involve only private actors. Thus, allowing her to amend to add a due process claim would also be futile.

Accordingly, plaintiff's arguments based on sex discrimination and deprivation of due process are irrelevant because they do not address any claims that she has asserted in this matter.

> D.   Plaintiff Has No Evidence to Establish a Prima Facie Case of Race Discrimination

In her race discrimination claim, Skiba alleges that she was given less training than another employee, whom she asserts is African-American.  Plaintiff may also be alleging a racially hostile work environment based on criticism she received from other employees, and perhaps her supervisor, when she worked in the grill.  Complaint, Record Doc. No. 1, at ¶ 2, p. 2; EEOC Charge of Discrimination dated April 15, 2013, Record Doc. No. 1 at p. 9; report of "discrimination and harassment" dated December 24, 2012, Record Doc. No. 1 at p. 18.

Jacobs argues that Skiba cannot establish a prima facie case of race discrimination. Jacobs also contends that, even if she could make out a prima facie case, defendant has

proffered legitimate, nondiscriminatory reasons for its actions and plaintiff has no evidence to rebut and to show that those reasons were a pretext for discrimination.

Skiba has no direct evidence of racial discrimination.  Thus, she bears the initial burden of providing evidence to establish a prima facie case.  Edwards v. Senatobia Mun. Sch. Dist., No. 13-60405, 2013 WL 6511501, at *2 (5th Cir. Dec 13, 2013) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); Richardson v. Prairie Opportunity, Inc., 470 F. App'x 282, 285 (5th Cir. 2012).

> To establish a prima facie case, an employee must show that [s]he (1) is a member of a protected class, (2) is qualified for the position in question, (3) has suffered an adverse employment action, and (4) was treated less favorably than employees outside the protected class.  Once an employee overcomes this initial hurdle, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action.  "If this burden is met by the [employer], the [employee] must then offer sufficient evidence that either (1) the [employer's] reason is not true, but is instead a pretext for discrimination or (2) the reason, while true, is only one of the reasons, and another motivating factor is the plaintiff's protected characteristic."

Edwards, 2013 WL 6511501, at *2 (citing Richardson, 470 F. App'x at 285) (quoting Nunley v. City of Waco, 440 F. App'x 275, 277 (5th Cir. 2011) (citing Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)) (emphasis added).

Summary judgment must be granted in defendant's favor if plaintiff fails to provide evidence to raise a material fact issue that she can satisfy any one of the four prongs of a prima facie case.  See id. (affirming summary judgment when plaintiff failed to produce evidence "demonstrating that he was treated less favorably than a similarly-

situated employee outside his protected class."); Turner v. Kan. City S. Ry., 675 F.3d 887, 900 (5th Cir. 2012) (same); Griffin v. Sea Mar Mgmt., Inc., 243 F. App'x 852, 854 (5th Cir. 2007) (citing Burger v. Cent. Apt. Mgmt., 168 F.3d 875, 879 (5th Cir. 1999)) (affirming summary judgment when no adverse employment action occurred).

In the instant case, Skiba has failed to produce any evidence to raise a material fact issue as to the third and fourth prongs of her prima facie case of race discrimination. The third prong requires evidence that she suffered an adverse employment action.

For purposes of discrimination claims, the term "adverse employment action" includes "'only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating,'" Bouvier v. Northrup Grumman Ship Sys., Inc., 350 F. App'x 917, 922 (5th Cir. 2009) (quoting McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007)), or actions that "'would tend to result in a change of [plaintiff's] employment status, benefits or responsibilities.'"  Martin v. Lennox Int'l Inc., 342 F. App'x 15, 18 (5th Cir. 2009) (quoting Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 407 (5th Cir. 1999)); accord Anthony v. Donahoe, 460 F. App'x 399, 403 (5th Cir. 2012).

When plaintiff's summary judgment evidence contains no objective showing of a loss in compensation, duties or benefits, the evidence is insufficient to establish an adverse employment action.  Id. (citing Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004); Serna v. City of San Antonio, 244 F.3d 479, 485 (5th Cir. 2001)).  This

standard concerning the adverse employment action prong of a prima facie case of discrimination has <u>not</u> been altered by the decision of the United States Supreme Court in <u>Burlington N. & Santa Fe Ry. v. White</u>, 548 U.S. 53, 68 (2006), which confined the new standard for an "adverse employment action" announced in that case to retaliation claims.  <u>Mitchell</u>, 326 F. App'x at 854-55 (citing <u>White</u>, 548 U.S. at 67).

As a matter of law, defendant's failure to provide plaintiff with training that it provided to another employee is not an adverse employment action as defined by the Fifth Circuit when, as here, the difference in training leads to no loss of responsibility, pay or benefits.  See <u>Munoz v. Seton Healthcare, Inc.</u>, No. 13-50500, 2014 WL 701509, at *5 (5th Cir. Feb. 18, 2014) (citing <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 407 (5th Cir. 1999)) (denial of training peripheral to plaintiff's main duties is not adverse employment action when it does not tend to result in a change of employment status, benefits or responsibilities); <u>Martin</u>, 342 F. App'x at 18 (refusal to send plaintiff to semi-annual flight training was not adverse employment action); <u>Bell v. Bank of Am.</u>, 171 F. App'x 442, 443 n.4, 444 (5th Cir. 2006) (no adverse employment action when employer provided another employee with training two weeks before providing the training to plaintiff); <u>Roberson v. Game Stop/Babbage's</u>, 152 F. App'x 356, 361 (5th Cir. 2005) (citing <u>Shackelford</u>, 190 F.3d at 407; <u>Dollis v. Rubin</u>, 77 F.3d 777, 779-82 (5th Cir. 1995)) (failure to provide training is not adverse employment action).

To the extent that Skiba's complaint can be construed to allege that the negative feedback she received regarding her job performance and her transfer from the grill to the convenience store was discriminatory, "[t]he Fifth Circuit has warned against enlarging the definition of adverse employment action to encompass such things as 'disciplinary filings, supervisor's reprimands, and even poor performance by the employee.'" McCullar v. Methodist Hosp., No. 3:10-CV-1895-K, 2012 WL 760074, at *6 (N.D. Tex. Mar. 8, 2012) (quoting Roberson, 152 F. App'x at 360).  Non-race-based remarks by plaintiff's co-workers or supervisors about her inability to perform the job and her supervisor's decision to change her job duties, without any loss of pay, are not adverse employment actions as a matter of law.  Anthony, 460 F. App'x at 403 (5th Cir. 2012); King v. Louisiana, 294 F. App'x 77, 85-86 (5th Cir. 2008); Ellis v. Principi, 246 F. App'x 867, 870-71 (5th Cir. 2007); Washington v. Veneman, 109 F. App'x 685, 689 (5th Cir. 2004); Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000).

Similarly, as to the fourth prong of a prima facie case, Skiba has failed to raise a material fact issue that she was treated less favorably than employees outside her protected class of Caucasians.  Although she alleges that a new, African-American employee named "Bridgt" [sic][3] was hired and given two weeks of training in the restaurant while plaintiff received only two days of training, Skiba has produced no

---

[3]This apparent misspelling is how the name was typed on the unverified work schedules attached to plaintiff's complaint and her opposition memorandum.  Record Doc. No. 1, Plaintiff's Exh. 1; Record Doc. No. 48-1, Plaintiff's Exh. 1.

<u>evidence</u> to support her allegations.  Further, even if these allegations are accepted as true, there is no evidence that "Bridgt" and Skiba were similarly situated, as defined by the Fifth Circuit.

To establish the fourth prong of her prima facie case of race discrimination, Skiba must show that employees who were not members of her protected class were similarly situated, meaning that they "were treated differently under circumstances 'nearly identical' to [hers]." <u>Turner</u>, 675 F.3d at 893 (quoting <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1090 (5th Cir. 1995)).  The Fifth Circuit "'require[s] that an employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken under nearly identical circumstances.'"  <u>Id.</u> at 895 (quoting <u>Lee v. Kan. City S. Ry. Co.</u>, 574 F.3d 253, 260 (5th Cir. 2009)).

"'The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable [employment] histories'" with respect to the allegedly discriminatory action.  <u>Id.</u> at 893 (quoting <u>Lee</u>, 574 F.3d at 260).  "'If the difference between the plaintiff's conduct and that of those alleged to be similarly situated <u>accounts</u> for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.'"  <u>Id.</u> (quoting <u>Lee</u>, 574 F.3d at 260).  The Fifth Circuit has

"previously found that 'employees who have different work responsibilities . . . are not similarly situated.'" Werner v. Dep't of Homeland Sec., 441 F. App'x 246, 249 (5th Cir. 2011) (quoting Lee, 574 F.3d at 259-60).

Skiba alleges in her complaint, Record Doc. No. 1, and in her workplace "Discrimination or Harassment" report dated December 24, 2012 (which is attached to her complaint as Exhibit 8, Record Doc. No. 1 at p. 18, and to her opposition memorandum as Exhibit 2, Record Doc. No. 48-1, at p. 10), that she was hired to work in the casino, but she was moved to the grill temporarily because Jacobs was short-handed. She states that she received only two days of training, while "Bridgt" was recently hired as a new employee to work in the grill and was given two weeks of training. The circumstances of the two employees' hiring, work duties and training were not "nearly identical." Skiba was assigned to the grill temporarily on a somewhat urgent basis because defendant was short-handed, which accounts for the brief training she received. "Bridgt" was hired as a new employee specifically to work in the grill and received more extensive training. Those different circumstances account for the difference in treatment that Skiba received from Jacobs. Thus, plaintiff's allegations (even if they were supported by admissible evidence) cannot establish the fourth prong of a prima facie case of race discrimination.

In addition, Johnson's uncontroverted declaration, which is competent summary judgment evidence, establishes that Skiba received equal or greater training than other

employees.  The unverified work schedules submitted by plaintiff, even if they were admissible, contain <u>no</u> information regarding the training that either Skiba or "Bridgt" received.  Even if Skiba only received two days of training for working briefly at the grill, it is undisputed that she was hired and trained initially to work in the casino and was then transferred and trained to work in the convenience store, where Jacobs provided her with additional training and with a peer trainer to work side by side with her.  This hands-on training was designed to ensure that Skiba received proper training and instruction and to help her improve her job performance.  Skiba has no evidence that she was treated less favorably than similarly situated African-American employees in nearly identical circumstances, when the evidence shows that she was actually treated as well as or more favorably than other employees.

Skiba has failed to produce any evidence to create a material fact issue regarding the third and fourth prongs of her prima facie case of race discrimination based on lack of training and negative remarks about her performance.  "We need not consider whether [Jacobs] has articulated a legitimate, non-discriminatory reason for [its actions regarding plaintiff] because the [defendant's] burden to do so never arose."  <u>Edwards</u>, 2013 WL 6511501, at *2 (citing <u>Richardson</u>, 470 F. App'x at 285).

Accordingly, Jacobs is entitled to summary judgment in its favor as a matter of law on plaintiff's race discrimination claim.

E.     Plaintiff Has No Evidence to Establish a Prima Facie Case of a Racially
       Hostile Work Environment

To the extent that plaintiff's pro se complaint might be construed to include allegations of a racially hostile work environment, she has produced no evidence that any negative comments by her co-workers or supervisor were based on her race.

> To establish a hostile work environment under title VII, [plaintiff] must prove that
> > (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on [race]; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Mitchell v. Snow, 326 F. App'x 852, 857 (5th Cir. 2009) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)) (emphasis added).  Again, plaintiff's failure to produce evidence to raise a material fact issue as to any of the prongs of a prima facie case will result in summary judgment for defendant.

Skiba asserts that her co-workers and supervisor were rude to her and that the rude comments were occasioned by and related to her inability to perform job tasks at the grill. Although she alleges that her co-workers were not similarly rude to African-American employees, she has provided no evidence that the comments made to her about her inadequate job performance were based on racial animus.  Skiba merely speculates that race was the reason.

"Fifth Circuit precedent makes it clear that subjective belief of racial motivation cannot import racial animus into an individual's conduct, and, <u>without objective evidence</u>, is insufficient to create a prima facie claim for a hostile work environment under Title VII." <u>Montgomery v. Sears Roebuck & Co.</u>, 720 F. Supp. 2d 738, 745 (W.D. La. 2010) (citing <u>Lyles v. Tex. Alcohol Beverage Comm'n</u>, No. 09-20714, 379 F. App'x 380, 384085 (5th Cir. 2010); <u>Cavalier v. Clearlake Rehab. Hosp., Inc.</u>, 306 F. App'x 104, 107 (5th Cir. 2009); <u>Johnson v. TCB Constr. Co.</u>, 334 F. App'x 666, 671 (5th Cir. 2009); <u>Garza v. Laredo Indep. Sch. Dist.</u>, 309 F. App'x 806, 809 (5th Cir. 2009); <u>Baker v. FedEx Ground Package Sys., Inc.</u>, 278 F. App'x 322, 329 (5th Cir. 2008); <u>Watkins v. Tex. Dep't of Crim. Justice</u>, 269 F. App'x 457, 464 (5th Cir. 2008); <u>Ellis</u>, 246 F. App'x at 871; <u>Harris-Childs v. Medco Health Solutions, Inc.</u>, 169 F. App'x 913, 917 (5th Cir. 2006)) (emphasis added).

Because Skiba fails to produce any evidence to establish a material fact issue regarding her prima facie case of a racially hostile work environment, Jacobs is entitled to summary judgment in its favor on this claim.

F.    Plaintiff Has No Evidence to Establish "But For" Causation to Support her Claim of Retaliation

Defendant argues that Skiba cannot establish a prima facie case of retaliatory termination.  Jacobs also contends that, even if plaintiff could make out a prima facie case of retaliation, she has no evidence to rebut defendant's proffered legitimate,

nonretaliatory reasons for terminating her employment and to carry her burden to establish that retaliation was the "but for" cause of defendant's action.

Skiba has no direct evidence of retaliation.  Thus, she bears the initial burden of providing evidence to establish a prima facie case.  Richardson, Inc., 470 F. App'x at 286 (citing McCoy, 492 F.3d at 556-57); Ogletree v. Glen Rose Indep. Sch. Dist., 443 F. App'x 913, 917-18 (5th Cir. 2011).

> To establish a prima facie case of retaliation under Title VII, a plaintiff "must establish that:  (1) [s]he participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." . . .  "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.  After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation."
>
> An employee establishes pretext by showing that the adverse action would not have occurred "but for" the employer's retaliatory reason for the action.  In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity.

Coleman v. Jason Pharm., 540 F. App'x 302, 303-04 (5th Cir. 2013) (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533-34 (2013)) (quoting McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007); LeMaire v. La., 480 F.3d 383, 388-89 (5th Cir. 2007); Long v. Eastfield Coll., 88 F.3d 300, 308 (5th Cir. 1996)) (emphasis added).  As with her discrimination claim, plaintiff's failure to produce evidence that

raises a material fact issue as to any of the prongs of a prima facie case of retaliation will result in summary judgment for defendant.

Jacobs argues that Skiba has no admissible evidence to show that she engaged in activity protected by Title VII.  See 42 U.S.C. § 2000e-3(a) (unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").  However, Skiba asserts that she called defendant's employee hotline to complain of race discrimination.  She attached to her complaint and opposition memorandum an unverified copy of a report of discrimination and harassment dated December 24, 2012.

Although Jacobs acknowledges that Skiba made an internal complaint about her training, defendant disputes that this unverified complaint is authentic and disputes that her hotline complaint constituted protected activity.  Solely for purposes of the pending summary judgment motion, the court resolves this material fact dispute in Skiba's favor and assumes that, if she provided sworn testimony and a verified copy of her complaint, she could show that she complained to her employer about racially discriminatory training and racially harassing comments by her co-workers and supervisor.  Thus, the court assumes without deciding that Skiba could establish the first prong of a prima facie case of retaliation.

25

The termination of plaintiff's employment was an adverse employment action, which satisfies the second prong of a prima facie case. As to the third prong, Jacobs discharged Skiba on January 7, 2013, only two weeks after she complained of discrimination via the employee hotline. The close temporal proximity between her complaint and her termination suffices to show a causal connection between the protected activity and the adverse employment action. "[A]lthough the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case, close timing between the protected activity and adverse employment action may provide evidence of a causal link." Schroeder v. Greater New Orleans Fed. Credit Union, 664 F.3d 1016, 1025 (5th Cir. 2011) (citing Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997)) (quotation omitted); accord Feist v. La. Dep't of Justice, 730 F.3d 450, 454-55 (5th Cir. 2013) (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001); McCoy, 492 F.3d at 562; Evans v. Houston, 246 F.3d 344, 354 (5th Cir. 2001)).

The burden thus shifts to Jacobs to state a legitimate, non-retaliatory reason for discharging Skiba. This is a burden of production only, not of persuasion.

> While the defendant is not required to "persuade the court that it was actually motivated by the proffered reasons," in order to satisfy its burden, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for [its decision]." . . . "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity,"; that is, "the inquiry . . . turns from the few generalized factors

that establish a prima facie case to the specific proofs and rebuttals of discriminatory [or retaliatory] motivation the parties have introduced[.]"

Turner, 675 F.3d at 900-01 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 516 (1993); Tex. Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981)).

Jacobs has met its burden to produce evidence of its legitimate, non-retaliatory reasons for terminating plaintiff's employment. Asha Johnson, defendant's Louisiana Director of Human Resources, declared under oath that Skiba had difficulties performing the duties for which she was hired as a casino associate and continued to have difficulties performing the duties of a store associate after plaintiff was switched to that position. Johnson's declaration, the contemporaneous written report from the Weiser Security guard and the surveillance videotape are competent evidence to show that Jacobs received a complaint from a male customer named ZZ that Skiba made an offensive comment to him on January 5, 2013. Johnson investigated the complaint and reviewed the video footage. Skiba admits that the videotape from Camera Number 8 shows her conversing with ZZ on that date. Although the second videotape from Camera Number 6 does not depict the person to whom Skiba gestured with the knife, Johnson's interpretation of the footage was that, "[a]s part of the exchange, the Plaintiff picked up a knife by the sink and shook the knife while looking directly at the customer." Johnson decided that this incident, combined with plaintiff's employment record, was serious

enough to warrant terminating Skiba's employment for violating company policy on numerous occasions, particularly during this incident.

Therefore, "the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation," meaning that Skiba must produce evidence that her termination "would not have occurred 'but for' the employer's retaliatory reason."  Coleman, 540 F. App'x at 304 (quotation omitted).

Skiba has produced no evidence that Jacobs would not have taken the action "but for" her protected activity.  Plaintiff speculates that she was terminated in retaliation for her complaint of discrimination two weeks earlier, but she has no evidence to raise a material fact issue that defendant's motives were retaliatory.  It is well established that

> close timing between a protected activity and an adverse action, standing alone, is not enough to show but-for causation.  Instead, such temporal proximity must be coupled with other evidence showing a retaliatory motive.  Because [plaintiff] has not brought other evidence raising an inference of retaliation, the temporal proximity, by itself, is not enough to establish a but-for causation.

Coleman, 2013 WL 5203559, at *2 n.1 (citing McCoy, 492 F.3d at 562) (emphasis added); accord Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 660 (5th Cir. 2012); Lorentz v. Alcon Labs., Inc., 535 F. App'x 319, 323 n.5 (5th Cir. 2013) (citing Wilson v. Noble Drilling Servs., Inc., 405 F. App'x 909, 914 (5th Cir. 2010)); Roberson v. Alltel Info. Servs., 373 F.3d 647, 656 (5th Cir. 2004).

28

Because Jacobs has articulated a legitimate, non-retaliatory reason for terminating Skiba's employment,

> the burden shifts back to [plaintiff] to show that [defendant's] proffered reason is a pretext for its actual retaliatory purpose.  [Plaintiff] makes no submission on this point and, therefore, fails to carry [her] burden.FN15 [She] submits no evidence that the defendant's explanation is "false or unworthy of credence."  There is no evidence showing that retaliation was the but-for cause of [plaintiff's termination].
> FN15. . . . .  Subjective beliefs and speculation do not satisfy [plaintiff's] burden to submit summary judgment evidence of pretext.

Simpson v. Sewerage & Water Bd., No. 12-2038, 2014 WL 790871, at *13 (E.D. La. Feb. 26, 2014) (quoting Laxton v. Gap, Inc., 333 F.3d 572, 580 (5th Cir. 2003)); accord Coleman, 2013 WL 5203559, at *2 n.1; Lorentz, 535 F. App'x at 323 n.5; Hernandez, 670 F.3d at 660.

Skiba's mere speculation that the video footage on the compact disc provided to her and the court was fabricated is refuted by Johnson's uncontroverted declaration that the compact disc contains a true and correct copy of the surveillance video.  Further, Johnson's interpretation of the soundless footage, based on her knowledge of Skiba's employment history and the facts surrounding the customer's complaint about Skiba's offensive comment, is neither unreasonable nor overtly contradicted by the footage itself. While another viewer might interpret the footage as supportive of plaintiff's version of her interaction with the customer,

> an employee cannot establish that an employer's reason for termination is pretexual [sic] simply by "disputing the truth of the underlying facts for

that reason."  Simply disputing the underlying facts "merely implies that an employer may have made a mistake in deciding to take action against an employee.  Because <u>even an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee</u>," an employee must submit evidence to "support an inference that the employer had a retaliatory motive, not just an incorrect belief."  Here, even assuming [that Johnson] mistakenly believed the negative [complaint from the customer], <u>[Skiba] has failed to submit any evidence of a retaliatory motive</u>.

<u>Coleman</u>, 2013 WL 5203559, at *2 (quoting <u>Haverda v. Hays Cnty.</u>, 723 F.3d 586, 596 n.1 (5th Cir. 2013)) (emphasis added); <u>accord</u> <u>Lorentz</u>, 535 F. App'x at 325-26 (citing <u>Mayberry</u>, 55 F.3d at 1091).

"[A]nti-discrimination laws are not vehicles for judicial second-guessing of business decisions." <u>Mato v. Baldauf</u>, 267 F.3d 444, 452 (5th Cir. 2001) (quoting <u>Deines v. Tex. Dep't of Protective & Regulatory Servs.</u>, 164 F.3d 277, 281 (5th Cir. 1999)); <u>accord</u> <u>Moss v. BMC Software, Inc.</u>, 610 F.3d 917, 926 (5th Cir. 2010).  It is immaterial whether defendant's decision may have been based on incorrect facts, so long as its decision was not motivated by retaliatory animus.  <u>Id.</u>; <u>Mato</u>, 267 F.3d at 452.  Thus, the Fifth Circuit has "emphasize[d] . . . that a fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith."  <u>Cervantez v. KMGP Servs. Co.</u>, 349 F. App'x  4, 10 (5th Cir. 2009) (citing <u>Waggoner v. City of Garland</u>, 987 F.2d 1160, 21 1165 (5th Cir. 1993)).  "Even if evidence suggests that a decision was wrong, [the court] will not substitute our judgment . . . for the employer's business judgment."  <u>Scott v. Univ. of</u>

30

Miss., 148 F.3d 493, 509-10 (5th Cir. 1998), abrogated on other grounds by Kimel v. Fla.

Bd. of Regents, 528 U.S. 62, 72 (2000) (citation omitted).

Skiba has failed to produce evidence to create a material fact issue that Jacobs

would not have terminated her but for her protected activity.   Accordingly, Jacobs is

entitled to summary judgment in its favor on plaintiff's claim of retaliation.

## CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that defendant's motion for

summary judgment is GRANTED and that plaintiff's claims are DISMISSED WITH

PREJUDICE.   Judgment will be entered accordingly, plaintiff to bear all costs of this

proceeding.   Fed. R. Civ. P. 54(d)(1).

New Orleans, Louisiana, this _____26th_____ day of March, 2014.


_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

31